# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2010AP2003-CR |
| COMPLETE TITLE: | |

State of Wisconsin,
        Plaintiff-Respondent,
    v.
Courtney C. Beamon,
        Defendant-Appellant-Petitioner.

REVIEW OF A DECISION OF THE COURT OF APPEALS
Reported at 336 Wis. 2d 438, 804 N.W.2d 706
(Ct. App. 2011 - Published)
PDC No: 2011 WI App 131

| | |
|---|---|
| OPINION FILED: | May 29, 2013 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | September 5, 2012 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Racine |
| JUDGE: | Emily S. Mueller |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| DISSENTED: | Bradley, J., dissents; Abrahamson, C. J. joins. |
| NOT PARTICIPATING: | Prosser, J., did not participate. |

ATTORNEYS:

For the defendant-appellant-petitioner, there were briefs by *Donna L. Hintze*, assistant state public defender, and oral argument by *Donna L. Hintze*.

For the plaintiff-respondent, the cause was argued by *Sally L. Wellman* and the brief was by *Rebecca Rapp St. John*, assistant attorneys general, with whom on the brief was *J.B. Van Hollen*, attorney general.

An amicus curiae brief was filed by *Robert R. Henak* and *Henak Law Office, S.C.,* Milwaukee, on behalf of the Wisconsin Association of Criminal Defense Lawyers.

**2013 WI 47**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.   2010AP2003-CR
(L.C. No.   2007CF1499)

STATE OF WISCONSIN          :          IN SUPREME COURT

State of Wisconsin,

    Plaintiff-Respondent,

    v.

Courtney C. Beamon,

    Defendant-Appellant-Petitioner.

**FILED**

**MAY 29, 2013**

Diane M. Fremgen
Clerk of Supreme Court

---

REVIEW of a decision of the Court of Appeals.  *Affirmed.*

¶1   PATIENCE DRAKE ROGGENSACK, J.   This is a review of a published decision of the court of appeals[1] that affirmed the judgment of conviction entered by the Racine County Circuit Court.[2]   Relevant to this appeal, defendant Courtney C. Beamon was convicted of fleeing or attempting to elude a traffic officer, in violation of Wis. Stat. § 346.04(3) (2009-10).[3]

---

[1] State v. Beamon, 2011 WI App 131, 336 Wis. 2d 438, 804 N.W.2d 706.

[2] The Honorable Emily S. Mueller presided.

[3] All subsequent references to the Wisconsin Statutes are to the 2009-10 version unless otherwise indicated.

Beamon argues that, under the particular jury instructions given in this case, there was insufficient evidence to convict him of fleeing or attempting to elude a traffic officer. Specifically, Beamon claims that the jury instructions required the State to prove beyond a reasonable doubt that Beamon violated § 346.04(3) "by increasing the speed of the vehicle to flee," and that there was no evidence that Beamon increased the speed of his vehicle after law enforcement officers began to pursue him.

¶2 Wisconsin Stat. § 346.04(3) sets out the two requirements necessary for commission of the offense charged. The second requirement may be proven in three different ways. That is, § 346.04(3) does not require that the defendant's flight or attempt to elude have been accomplished by the defendant increasing the speed of his vehicle to flee, as the instructions given in this case provided. Beamon's argument, therefore, rests on his contention that the sufficiency of the evidence must be evaluated by comparison with the jury instructions actually given, even though those instructions added a requirement to the statutory definition of the crime.

¶3 We conclude that jury instructions that add requirements to what the statute sets out as necessary to prove the commission of a crime are erroneous; and therefore, we examine the sufficiency of the evidence in this case by comparison to what the statute requires and not by comparison to an additional requirement in the jury instructions. Furthermore, jury instruction errors are subject to harmless error analysis, which we apply here. A harmless error analysis

2

asks whether, based on the totality of the circumstances, it is clear beyond a reasonable doubt that a rational jury, properly instructed, would have found the defendant guilty.

¶4 We conclude that under the totality of circumstances, it is clear beyond a reasonable doubt the jury would have found Beamon guilty of fleeing or attempting to elude an officer absent the erroneous jury instruction. The evidence at trial unquestionably supported the jury's verdict that Beamon violated the fleeing or eluding statute. Accordingly, we conclude that there was sufficient evidence to convict Beamon, and we affirm the decision of the court of appeals.

## I. BACKGROUND

¶5 In the early morning hours of November 19, 2007, off-duty Racine Police Officer Dennis Cecchini and another officer were working as private security guards at the American Legion Bar in Racine. At approximately 12:45 a.m., the officers heard multiple gunshots. After radioing police dispatch, the two officers left the bar to investigate. Officer Cecchini heard two more gunshots, and took cover behind a parked vehicle.

¶6 Officer Cecchini then observed a male figure run from the porch of a nearby house in a crouched position and enter a vehicle parked near the house. Cecchini again radioed dispatch to describe the vehicle and to provide information about the vehicle's direction of travel, noting that the vehicle was driving north, with its headlights extinguished.

¶7 As he was speaking to the dispatcher, Cecchini heard Racine Police Officer Frank Miller remark on the radio that he

3

saw the vehicle that Cecchini had described. At that point, Officer Miller activated his emergency lights and siren and began following the vehicle, which he noted was travelling approximately 45 to 50 miles per hour in a 30 miles-per-hour zone.

¶8 When Officer Miller began pursuit, he was approximately three-quarters of a block behind the speeding vehicle. As the vehicle slowed to negotiate a soft right turn, Officer Miller closed the distance between his squad car and the other vehicle. After negotiating the turn, the vehicle continued driving toward an intersection controlled by a four-way stop sign. The vehicle, still with its lights off, drove through the intersection without stopping or slowing down.

¶9 Immediately after the vehicle passed through the intersection, Officer Miller saw the suspect roll out of the driver's-side door of the vehicle, which was then travelling approximately 25 miles per hour. The vehicle then ran over the suspect's legs and collided with a parked car.

¶10 After the suspect was run over by his vehicle, he stood up and began running away from Officer Miller's squad car. For a short time, Officer Miller remained in his squad car as he pursued the suspect, with the lights and sirens still activated. After coming within a few feet of the suspect, Officer Miller exited his vehicle and began pursuing on foot. During the chase, Officer Miller issued various orders to the suspect, all of which the suspect disregarded. After a lengthy chase, Miller

4

finally knocked the suspect to the ground, placed him in handcuffs, and took him to the hospital for medical treatment.

¶11 The suspect, later identified as Beamon, was charged in an eight-count information, including repeater enhancements for all counts. The charge relevant to Beamon's current appeal is Count 1, Vehicle Operator Flee/Elude Officer, in violation of Wis. Stat. § 346.04(3). For that charge, the information provided that: "On or about 11-19-2007 . . . [defendant Beamon did] unlawfully and feloniously, as the operator of a vehicle, after having received a visual or audible signal from a traffic officer, or marked police vehicle, knowingly flee or attempt to elude any traffic officer by willful or wanton disregard of such signal so as to interfere with or endanger the operation of the police vehicle, or the traffic officer or other vehicles or pedestrians, or did increase the speed of the vehicle or extinguish the lights of the vehicle in an attempt to elude or flee . . . ."

¶12 At trial, the jury heard testimony from Officer Cecchini describing the gunshots and the suspect's subsequent flight in a vehicle with its headlights extinguished. The jury also heard Officer Miller's testimony regarding the car chase, the suspect's exit from his moving vehicle, and the foot chase ending with Beamon's arrest.

¶13 Additionally, the jury heard Beamon's testimony, which generally corroborated the officers' testimonies. For example, Beamon testified to having been near the location of the shots fired; having gotten into the car and driven away with his

5

headlights extinguished; and having rolled out of the vehicle while it was still moving. Beamon also did not challenge Officer Miller's testimony that Miller had activated his emergency lights and siren during the pursuit; instead, Beamon asserted that he did not remember seeing or hearing the emergency signals until he approached the stop sign, at which point he rolled out of his vehicle. Beamon also testified that he had been extremely intoxicated that night.

¶14 During the course of the trial, the jury twice heard the charge against Beamon for fleeing or eluding, exactly as set forth in the information. The jury first heard the charge during jury selection, when assistant district attorney Sharon Riek read the entire information. The second time the jury heard the information was when Judge Mueller read the charge, as set forth in the statute, immediately before reading the jury instructions for the charged offense.

¶15 The instructions that the jury heard immediately following Judge Mueller's reading of the information did not track the language used in either Wis. Stat. § 346.04(3) or in the information. Instead, the instructions provided that:

> Sec. 346.04(3) of the Wisconsin Statutes is violated by a person who operates a motor vehicle on a highway after receiving a visual or audible signal from a marked police vehicle and knowingly flees any traffic officer by willful disregard of such signal so as to interfere with or endanger the traffic officer by increasing the speed of the vehicle to flee. Before you may find the defendant guilty of this offense, the State must prove by evidence which satisfies you beyond a reasonable doubt that the following two elements were present.

6

First, the defendant operated a motor vehicle on a highway after receiving a visual <u>and</u> audible signal from a marked police vehicle.

Secondly, the defendant knowingly fled a marked squad car by willful disregard of the visual <u>or</u> audible signal so as to interfere with or endanger the traffic officer <u>by increasing the speed of the vehicle to flee</u>.

(Emphases added.) The jury found Beamon guilty of fleeing or eluding a traffic officer, as well as the other seven counts charged. The circuit court subsequently entered a judgment of conviction on the jury verdict, and Beamon was sentenced.

¶16 Beamon appealed his conviction for fleeing or eluding, alleging that the evidence was insufficient to convict him, based on the jury instructions. Namely, Beamon argued that there was no evidence that he had increased the speed of his vehicle after Officer Miller began pursuing him, and that without such a showing, the State had failed to prove fleeing or eluding as that charge was stated in the jury instructions.

¶17 In a published opinion, <u>State v. Beamon</u>, 2011 WI App 131, 336 Wis. 2d 438, 804 N.W.2d 706, the court of appeals affirmed Beamon's conviction, concluding that the jury instructions on fleeing or eluding were erroneous, but that any discrepancy between the jury instructions and the charged offense was harmless. The court also concluded that the evidence was sufficient to affirm the conviction when measured against the offense charged. <u>Id.</u>, ¶¶11-12. Beamon petitioned this court for review, which we granted.

7

## II. DISCUSSION

### A. Standard of Review

¶18 Beamon argues that the evidence presented was insufficient to convict him of fleeing or eluding a traffic officer under the requirements of the charge as stated in the jury instructions. Because the jury instructions did not conform to the requirements of the offense of fleeing or eluding as set forth in Wis. Stat. § 346.04(3), Beamon's challenge requires us to determine, as a threshold matter, whether the jury instructions correctly stated the statutory requirements for conviction of the crime. Whether jury instructions accurately state the applicable law presents a question of law, which we review independently of the circuit court and the court of appeals, benefiting from their analyses. See State v. Fonte, 2005 WI 77, ¶9, 281 Wis. 2d 654, 698 N.W.2d 594.

¶19 Where jury instructions do not accurately state the controlling law, we will examine the erroneous instructions under the standard for harmless error, which presents a question of law for our independent review. See State v. Harvey, 2002 WI 93, ¶18, 254 Wis. 2d 442, 647 N.W.2d 189.

¶20 Finally, if we determine the jury instruction error was harmless, we will evaluate the sufficiency of the evidence under the correct legal standard, and when applying that standard, we will not overturn the jury's verdict "unless the evidence, viewed most favorably to the state and the conviction, is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a

8

reasonable doubt" based on the statutory requirements of the offense. See Fonte, 281 Wis. 2d 654, ¶10 (quoting State v. Poellinger, 153 Wis. 2d 493, 507, 451 N.W.2d 752 (1990)) (internal quotation marks omitted).

### B. Sufficiency of the Evidence

#### 1. Legal principles

¶21 The standard for reviewing the sufficiency of the evidence is highly deferential to a jury's verdict, and provides that an appellate court may not overturn a jury's verdict unless the evidence, viewed most favorably to sustaining the conviction, "is so insufficient in probative value and force that it can be said as a matter of law that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt." Poellinger, 153 Wis. 2d at 501. Accordingly, a defendant challenging the sufficiency of the evidence bears a heavy burden to show the evidence could not reasonably have supported a finding of guilt. State v. Hanson, 2012 WI 4, ¶31, 338 Wis. 2d 243, 808 N.W.2d 390.

¶22 This heavy burden for defendants challenging the sufficiency of the evidence, however, begs the question presented in this case. Here, the question is whether the evidence is sufficient according to what standard: the jury instructions actually used, the statutory requirements of the crime, or some other legal standard, such as the complaint or the information? Generally, when the jury instructions conform to the statutory requirements of that offense, we will review the sufficiency of the evidence by comparison to those jury

9

instructions. See, e.g., State v. Witkowski, 163 Wis. 2d 985, 991, 473 N.W.2d 512 (Ct. App. 1991). However, where the jury instructions do not accurately reflect the statute enacted by the legislature, we cannot review the sufficiency of the evidence with the jury instructions as our standard. See State v. Zelenka, 130 Wis. 2d 34, 48–49, 387 N.W.2d 55 (1986); see also Jackson v. Virginia, 443 U.S. 307, 318 (1979) (recognizing that "the critical inquiry on review of the sufficiency of the evidence . . . must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.").

¶23 When reviewing the sufficiency of the evidence, we cannot rely on an erroneous statement of the statute in the jury instructions as our standard, because doing so would, in effect, allow the parties and the circuit court in that case to define an ad hoc, common law crime. Cf. State v. Baldwin, 101 Wis. 2d 441, 446–47, 304 N.W.2d 742 (1981) (holding that conviction required proof beyond a reasonable doubt of statutory requirements of a criminal offense, rather than requirements as set forth in the complaint and information). Allowing parties or courts to establish the requirements necessary to constitute a crime is contrary to the established principle in Wisconsin that there are no common law crimes and that all crimes are defined by statute. See Wis. Stat. § 939.10 (abolishing common law crimes); Wis. Stat. § 939.12 (defining crime as "conduct which is prohibited by state law").

10

¶24 Accordingly, a jury instruction that does not accurately state the statutory requirements for the crime charged constitutes an erroneous statement of the law. See Zelenka, 130 Wis. 2d at 48; State v. Ferguson, 2009 WI 50, ¶44, 317 Wis. 2d 586, 767 N.W.2d 187 (noting that even a jury instruction "that is incomplete, but is in all other respects a correct statement of the law, may be erroneous"). Such instructional errors are presumed to be subject to harmless error analysis, see Hedgpeth v. Pulido, 555 U.S. 57, 61 (2008) (noting that "while there are some errors to which harmless-error analysis does not apply, they are the exception and not the rule") (internal quotation marks and alterations omitted). Harmless error analysis is appropriate when examining erroneous jury instructions "so long as the error at issue does not categorically vitiate all the jury's findings." Id. (quoting Neder v. United States, 527 U.S. 1, 11 (1999)) (internal quotation marks omitted). Often, such errors involve omissions from the jury instructions, whereby the State is relieved of the burden of proving one or more requirements of an offense. See, e.g., State v. Smith, 2012 WI 91, ¶¶60–63, 342 Wis. 2d 710, 817 N.W.2d 410 (reaffirming that harmless error analysis applies where jury instructions erroneously omitted a requirement that, under the Sixth Amendment, the jury should have been required to find), cert. denied, 133 S. Ct. 635 (2012).

¶25 If an error that relieves the State of part of its burden can be harmless, then, logically, a jury instruction that directs the State to prove additional requirements also may be

subjected to a harmless error analysis.  See Zelenka, 130 Wis. 2d at 48–49; State v. Courtney, 74 Wis. 2d 705, 715–16, 247 N.W.2d 714 (1976).  These types of errors typically attempt to increase the State's burden by requiring the State to prove, beyond a reasonable doubt, certain facts that are not part of the statutory definition of the relevant offense.  See Courtney, 74 Wis. 2d at 716 (upholding guilty verdict where jury instructions required additional finding, not required by the offense charged).[4]  Accordingly, as the United States Supreme Court has stated, because harmless error analysis can apply where a statutory requirement is withdrawn from the jury's consideration, refusing to allow harmless error analysis where the jury instructions include additional requirements would be "patently illogical."  See Hedgpeth, 555 U.S. at 61 (holding that harmless error analysis applies where jury was instructed on alternative theories of guilt).

---

[4] Our discussion in State v. Courtney, 74 Wis. 2d 705, 247 N.W.2d 714 (1976), did not decide the proper standard by which to review the sufficiency of the evidence when a jury instruction includes an additional requirement beyond those set forth in the statute.  Rather, in Courtney, the defendant's sufficiency of the evidence challenge was separate from his jury instruction error argument.  Id. at 713-16.  In his sufficiency of the evidence challenge, Courtney asserted that one of the requirements——as stated in the controlling administrative code section——had not been proved at trial.  See id. at 713–15.  His separate argument asserting that the jury instruction was erroneous simply alleged that the addition of that requirement entitled him to reversal.  See id. at 715–16.  We concluded that the evidence was sufficient to show that the offense had been proved, and that the additional requirement was, in effect, harmless.  See id. at 713–16.  Accordingly, our decision in Courtney supports our conclusion here.

¶26 Given that harmless error analysis applies in the context of jury instructions that omit statutory requirements, see Harvey, 254 Wis. 2d 442, ¶47, as well as jury instructions that include extra considerations beyond what the statute requires, see Hedgpeth, 555 U.S. at 61, we conclude that harmless error analysis is appropriate where jury instructions include a requirement in addition to that set forth in a statute, such as occurred in Beamon's case. To illustrate, in Beamon's case, the jury was asked whether Beamon interfered with or endangered the traffic officer "by increasing the speed of [his] vehicle to flee." (Emphasis added.) Because such a connection suggests that the jury had to find that the defendant interfered with or endangered the officer by engaging in particular conduct, this type of requirement is distinguishable from requirements that are not related to the defendant's conduct; for example, a requirement for an offense that would direct the jury to find that a firearm is a "deadly weapon." Cf. Washington v. Recuenco, 548 U.S. 212, 215-16 (2006) (concluding that harmless error may apply where sentencing court determined that "firearm" enhancement applied, although jury found defendant had used a "deadly weapon," rather than a "firearm"). Nonetheless, because instructional errors are subject to harmless error analysis, jury instructions that add an additional requirement also are subject to harmless error analysis.[5] See Hedgpeth, 555 U.S. at 61.

---

[5] One persuasive rationale for applying harmless error analysis in this context is that many instructional errors can

¶27 Therefore, where a jury instruction erroneously states the applicable statute, we must determine whether, under the totality of the circumstances, the erroneous instruction constituted harmless error. See Harvey, 254 Wis. 2d 442, ¶46; see also State v. Mayo, 2007 WI 78, ¶48, 301 Wis. 2d 642, 734 N.W.2d 115 (listing several appropriate considerations for harmless error analysis). Under the standard for evaluating harmless error, when a court reviews a conviction based on a jury instruction that included an erroneous requirement, the court must ask whether it is "'clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.'" See Harvey, 254 Wis. 2d 442, ¶49 (quoting Neder, 527 U.S. at 18).

¶28 Where the erroneous instructions are determined to have been harmless, based on the totality of the circumstances, a court should review the sufficiency of the evidence by comparing the evidence with the statutory requirements of the crime. See Zelenka, 130 Wis. 2d at 48-52. This conclusion is grounded in the defendant's constitutional right of "proof

just as easily be described as mischaracterizing a statutory requirement as they can be described as imposing an additional requirement. Cf. California v. Roy, 519 U.S. 2, 5 (1996) (per curiam) ("The specific error at issue here—an error in the instruction that defined the crime—is . . . as easily characterized as a 'misdescription of an element' of the crime, as it is characterized as an error of 'omission.'"). Accordingly, when a jury instruction imposes an additional requirement, not itself required by the statute, the instruction can be said to have incorrectly stated the actual requirements of the offense according to the statute that sets forth the crime. See id.

beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). The corollary to this principle is that a defendant does not have a right to proof beyond a reasonable doubt for facts that are not required by the statutory statement of the crime. See United States v. Inman, 558 F.3d 742, 748 (8th Cir. 2009). Therefore, where a defendant challenges the sufficiency of the evidence and the challenge rests on an inaccurate statement of the law in the jury instructions, but the inaccurate statement of the law is determined to have been harmless, the defendant's sufficiency of the evidence challenge typically will fail. See Zelenka, 130 Wis. 2d at 48–52.

### 2. Application

¶29 Beamon claims that, based on the jury instructions for fleeing or attempting to elude in his case, there was insufficient evidence to support a finding of guilt beyond a reasonable doubt. Because a sufficiency of the evidence review requires us first to ascertain whether the jury instructions were in accord with controlling law, we begin our analysis of Beamon's claim with an examination of the controlling statute, Wis. Stat. § 346.04(3). That statute provides, in its entirety:

> No operator of a vehicle, after having received a visual or audible signal from a traffic officer, or marked police vehicle, shall knowingly flee or attempt to elude any traffic officer by willful or wanton disregard of such signal so as to interfere with or endanger the operation of the police vehicle, or the traffic officer or other vehicles or pedestrians, nor shall the operator increase the speed of the

15

operator's vehicle or extinguish the lights of the vehicle in an attempt to elude or flee.

¶30 In State v. Sterzinger, 2002 WI App 171, ¶9, 256 Wis. 2d 925, 649 N.W.2d 677, the court of appeals examined the statutory requirements of the offense of fleeing or eluding under Wis. Stat. § 346.04(3). The court of appeals explained the offense as follows:

(1) No operator of a vehicle, after having received a visual or audible signal from a traffic officer, or marked police vehicle,

(2) shall knowingly flee or attempt to elude any traffic officer,

(3) by wilful or wanton disregard of such signal so as to interfere with or endanger the operation of the police vehicle, or the traffic officer or other vehicles or pedestrians.

Id.

¶31 As the court in Sterzinger noted, the first requirement——having operated a vehicle after receiving a visual or audible signal from a traffic officer or marked police vehicle——corresponds to the first requirement of the crime of fleeing or eluding. See id.; see also Wis JI—Criminal 2630. The court also noted that the second requirement "encompasses a knowing act (fleeing or attempting to elude the officer), which results in criminal liability under the statute if it is accompanied by one of three additional facts." Sterzinger, 256 Wis. 2d 925, ¶9. That is, the second and third requirements explained in Sterzinger——(2) knowingly fleeing/attempting to elude and (3) by willful or wanton disregard of the signal so as to interfere with or endanger the officer, vehicles, or

16

pedestrians——comprise <u>one</u> of the three methods of satisfying the second requirement of the offense. <u>See</u> Wis JI—Criminal 2630.

¶32 Under both the statute and the pattern instructions, however, there are also two other methods by which the second statutory requirement of the offense can be satisfied. Each of these methods requires proof beyond a reasonable doubt that "the defendant knowingly fled or attempted to elude a traffic officer," but each then provides a different method by which knowing flight or attempted eluding may be shown. The two other methods of showing fleeing or attempting to elude are "by increasing the speed of the vehicle" or "by extinguishing the lights of the vehicle." <u>See</u> Wis JI—Criminal 2630. These are alternatives and also separate from the "disregarding the visual or audible signal so as to interfere with or endanger" method discussed previously.

¶33 With this understanding of the statutory requirements of Wis. Stat. § 346.04(3), we turn to the jury instructions in Beamon's case to determine whether they properly stated the terms of the statute. Those instructions provide, in relevant part:

Statutory Definition of the Crime

Section 346.04(3) of the Wisconsin Statutes is violated by a person who operates a motor vehicle on a highway after receiving a visual or audible signal from a marked police vehicle and knowingly flees any traffic officer by willful disregard of such signal so as to interfere with or endanger the traffic officer <u>by increasing the speed of the vehicle to flee.</u>

17

State's Burden of Proof

Before you may find the defendant guilty of this offense, the State must prove by evidence which satisfies you beyond a reasonable doubt that the following two elements were present.

Elements of the Crime That the State Must Prove

1. The defendant operated a motor vehicle on a highway after receiving a visual <u>and</u> audible signal from a marked police vehicle.

2. The defendant knowingly fled a marked squad car by willful disregard of the visual or audible signal so as to interfere with or endanger the traffic officer <u>by increasing the speed of the vehicle to flee</u>.

(Emphases added.)

¶34 Upon review of the instructions used in this case, we conclude that the instructions did not properly state the statutory requirements for fleeing or eluding under Wis. Stat. § 346.04(3). First, the instructions required that the jury find that the defendant received "a visual <u>and</u> audible signal from a marked police vehicle." Section 346.04(3), however, does not phrase the requirement in the conjunctive, and instead may be satisfied by a finding that the defendant received either a visual <u>or</u> an audible signal.

¶35 Second, and more importantly, the instructions combined two alternative methods of proving the second requirement of the offense. To reiterate, the second requirement of Wis. Stat. § 346.04(3)——that the defendant knowingly fled or attempted to elude an officer——may be demonstrated in one of three ways: (1) willful disregard of the signal so as to interfere with or endanger the officer,

18

vehicles, or pedestrians; (2) increasing the speed of the vehicle; or (3) extinguishing the lights of the vehicle. In the instructions in Beamon's case, the first and second methods of showing that the defendant knowingly fled or attempted to elude were erroneously set out as though both were required. The jury was therefore asked not only whether Beamon fled or attempted to elude by his willful disregard of the signal so as to interfere with or endanger, but also whether such interference or endangerment was in turn caused by Beamon having increased the speed of his vehicle.

¶36 The jury instructions directions for proving the second statutory requirement by two different factual predicates had the effect of creating an additional requirement for the offense of fleeing or eluding. This is contrary to the legislature's clear separation of the methods by which the State could show that a defendant's conduct satisfied the second statutory requirement of fleeing or attempting to elude an officer. The legislature chose alternative methods by which Wis. Stat. § 346.04(3) may be contravened; and therefore, we conclude that the instructions requirement of proof by two methods was erroneous.

¶37 Because the jury instructions were erroneous, we determine whether the error was harmless. Under the totality of the circumstances, as shown in the record, we are satisfied that the erroneous jury instructions were harmless: it is clear beyond a reasonable doubt that the jury would have convicted

19

Beamon of fleeing or eluding if proper instructions had been given.

¶38 We first note that the erroneous jury instructions were not the only statement of the law of fleeing or eluding that the jury received; and therefore, it may be said that the effect of the erroneous instructions were ameliorated by the jury having heard multiple correct statements of the law. That is, the jury was twice read the charge as set forth in the information, which properly stated the statutory requirements of Wis. Stat. § 346.04(3). Notably, one of those readings came immediately before the court read the erroneous instructions. This is noteworthy because the verdict form that the jury was required to submit directed the jurors' attention to the criminal information, rather than the jury instructions, and stated that "We the jury find the defendant, Courtney C. Beamon, Guilty of Operating a Motor Vehicle to Flee or In an Attempt to Elude an Officer as charged in Count One of the Information." (Emphasis added.) Accordingly, the multiple instances in which the jury was properly told the statutory requirements are a factor in our harmless error analysis.

¶39 Furthermore, the jury heard in-depth accounts of the events of November 19, including Officer Miller's statements about seeing Beamon's vehicle speeding away from the shooting scene with its lights extinguished; the officer's activating the squad's emergency lights and siren; and his following Beamon's vehicle closely during the car chase. Officer Miller related Beamon's rolling out of his moving car after running a stop sign

20

and then seeing the driverless car run into a parked car. The jury also heard Beamon's version of the events, which did not attempt to discredit the officers' accounts of the chase, but instead simply attempted to cast Beamon's actions in a more favorable light by suggesting that, when he left the scene of the shooting he was merely trying to get home to his family. In light of all the testimony, we conclude that it is clear beyond a reasonable doubt that a rational jury, properly instructed on the statutory requirements of fleeing or eluding, would have found Beamon guilty.

¶40 Accordingly, as we shift our analysis to Beamon's sufficiency of the evidence challenge, we conclude that the jury instructions cannot provide the proper standard for analysis. Rather, Beamon's challenge must be reviewed in the context of the statutory requirements of fleeing or eluding under Wis. Stat. § 346.04(3). Applying those requirements, Beamon's challenge does not meet the high standard for reversal of a jury's verdict under a sufficiency of the evidence review. That is, in light of the facts adduced at trial, it cannot reasonably be said "as a matter of law that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt" for the alleged violation of § 346.04(3). See Poellinger, 153 Wis. 2d at 501. Therefore, Beamon's challenge to the sufficiency of the evidence must fail.

¶41 Nonetheless, we briefly address Beamon's two primary arguments, which are that (1) our decision in State v. Wulff, 207 Wis. 2d 143, 557 N.W.2d 813 (1997), requires reversal of

21

Beamon's conviction; and (2) the State's proffering of the erroneous instructions constituted forfeiture of its challenge to the instructions as erroneous.

¶42 First, Beamon argues that reversal is required based on our statement in Wulff that, in the context of a sufficiency of the evidence challenge, we would uphold the defendant's conviction "only if there was sufficient evidence to support guilt on the charge submitted to the jury in the instructions." Id. at 153. Although our statement in Wulff seems facially contradictory to our holding today, our decision in Wulff is distinguishable from this case on at least two bases.

¶43 In Wulff, the jury was presented with evidence regarding an alleged sexual assault, including some evidence that the defendant had attempted fellatio with the victim, which constitutes sexual intercourse under Wis. Stat. § 940.225(5)(b). However, there was no evidence that the defendant had attempted genital or anal intrusion. See id. at 152. Notwithstanding the trial testimony, the jury instructions asked whether the defendant committed second-degree sexual assault by attempted genital or anal intrusion, but not whether the assault was committed by attempted fellatio. See id. at 147-49. Nonetheless, the jury returned a verdict of guilty on the charge of attempted sexual assault by genital or anal intrusion. See id. at 149. Based on the lack of any evidence of attempted genital or anal intrusion, this court reversed Wulff's conviction. See id. at 154.

22

¶44 The primary distinction between Wulff and our decision today is the nature of the jury instructions in each case. In Wulff, the instructions did not add a requirement to the applicable law; instead, the instructions properly stated one of the methods by which a defendant could commit second-degree sexual assault and completely omitted the method for which there was testimony. Therefore, in Wulff, the jury was asked to apply the correct law to the facts adduced at trial, and reached a conclusion contrary to the evidence. In that situation, the proper standard for evaluating the sufficiency of the evidence was the jury instructions, because the instructions conveyed a correct statement of the law, and thereby informed the jury of the requirements of an actual statutory offense. Under that standard, the court concluded that "no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt" for the offense upon which the jury was instructed. Poellinger, 153 Wis. 2d at 507.

¶45 In contrast to Wulff, in which we stated that we could uphold the conviction "only if there was sufficient evidence to support guilt on the charge submitted to the jury," 207 Wis. 2d at 153, here, the addition of a requirement created a charge that does not exist in the statutes. If we evaluated sufficiency of the evidence against the instructions given, we would be sanctioning the creation of a new crime that was not created by the legislature. This is contrary to Wis. Stat. § 939.10, which outlaws common law crimes. Therefore,

23

sufficiency of the evidence in Beamon's case cannot justifiably be measured against the jury instructions.

¶46 Second, <u>Wulff</u> is distinguishable because the decision did not address harmless error. Although we need not decide here whether the jury instructions in <u>Wulff</u> would be subject to harmless error analysis, we note that <u>Wulff</u> preceded our decision in <u>Harvey</u>, 254 Wis. 2d 442, ¶49, in which we adopted the now-controlling standard for harmless error analysis. Indeed, our analysis in this case rests largely on the harmlessness of the erroneous jury instructions, in that it is clear beyond a reasonable doubt that a rational jury, properly instructed on the statutory requirements of the offense of fleeing or eluding, would have found Beamon guilty.[6] Therefore, the evidence was sufficient to convict him on that charge.

¶47 Beamon's final argument in support of analyzing his sufficiency of the evidence challenge under the erroneous jury instructions is that the State forfeited its argument that the instructions were erroneous, first by proffering the instructions and then by failing to object at the instructions conference. Beamon relies upon Wis. Stat. § 805.13(3),[7] which is

---

[6] The applicability of the harmless error doctrine distinguishes this criminal case from the multiple civil cases in which we may have suggested that sufficiency of the evidence "is evaluated in light of the jury instructions." <u>See</u> <u>D.L. Anderson's Lakeside Leisure Co. v. Anderson</u>, 2008 WI 126, ¶22, 314 Wis. 2d 560, 757 N.W.2d 803.

[7] Wisconsin Stat. § 805.13(3) is made applicable to criminal cases by operation of Wis. Stat. § 972.11(1).

entitled "Instruction and Verdict Conference," and provides that "[f]ailure to object at the conference constitutes a waiver of any error in the proposed instructions or verdict."[8] We decline to adopt Beamon's forfeiture argument for two reasons.

¶48 First, allowing the instructions to control would cause the instructions erroneous statement to create a criminal statute. This is contrary to the legislature's exclusive authority to enact criminal statutes, and would undermine the precept that there are no common law crimes in Wisconsin. Second, as the state court of last resort, our responsibility is "to oversee and implement the statewide development of the law." See State v. Schumacher, 144 Wis. 2d 388, 405, 424 N.W.2d 672 (1988) (quoting State v. Mosley, 102 Wis. 2d 636, 665, 307 N.W.2d 200 (1981)) (internal quotation marks omitted). As we recognized in Schumacher, the "power to review an error, even one technically waived, is essential for this court to properly discharge its functions." Id. at 406. Therefore, we have a responsibility to declare what the correct law is, and we need not deny review of an important question of law based on a party's failure to raise the issue below. See id. "This does

---

[8] Based on our case law discussing the doctrines of waiver and forfeiture, we conclude that such failure to object is more properly labeled forfeiture than waiver. See State v. Ndina, 2009 WI 21, ¶29, 315 Wis. 2d 653, 761 N.W.2d 612 ("Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right.") (quoting United States v. Olano, 507 U.S. 725, 733 (1993)) (internal quotation marks omitted).

25

not mean, however, that we will use this broad discretionary-review power indiscriminately." Id. at 407.

¶49 Accordingly, an unobjected-to but erroneous statement of the law in the jury instructions is not per se unreviewable by this court where the parties failed to raise the issue in the trial court. See Zelenka, 130 Wis. 2d at 43–45. Rather, we have discretion to disregard alleged forfeiture or waiver and consider the merits of any issue because the rules of forfeiture and waiver are rules of "administration and not of power." See State v. Riekkoff, 112 Wis. 2d 119, 124, 332 N.W.2d 744 (1983); see also Zelenka, 130 Wis. 2d at 44. Therefore, we decline to apply the doctrine of forfeiture to the situation presented in this case.

### III. CONCLUSION

¶50 We conclude that jury instructions that add requirements to what the statute sets out as necessary to prove the commission of a crime are erroneous; and therefore, we examine the sufficiency of the evidence in this case by comparison to what the statute requires and not by comparison to an additional requirement in the jury instructions actually given. Furthermore, jury instruction errors are subject to harmless error analysis, which we apply here. A harmless error analysis asks whether, based on the totality of the circumstances, it is clear beyond a reasonable doubt that a rational jury, properly instructed, would have found the defendant guilty.

26

¶51  We conclude that under the totality of circumstances, it is clear beyond a reasonable doubt the jury would have found Beamon guilty of fleeing or attempting to elude an officer absent the erroneous jury instruction.  The evidence at trial unquestionably supported the jury's verdict that Beamon violated the fleeing or eluding statute.  Accordingly, we conclude that there was sufficient evidence to convict Beamon, and we affirm the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

¶52  DAVID T. PROSSER, J., did not participate.

¶53 ANN WALSH BRADLEY, J. *(dissenting).* The precipitating error at trial lies not in the wording of a jury instruction. Rather, the precipitating error at trial lies in the State's decision to request a jury instruction that contains a factual theory of prosecution for which there was no supporting evidence.

¶54 The majority compounds that error by treating a factual theory of prosecution as an element of the offense, thus concluding that the jury instruction is erroneous. It is not.

¶55 Week in and week out, courts throughout this state regularly give jury instructions that contain factual theories of prosecution. To transform a factual theory of prosecution into an element of the offense calls into question the legitimacy of that regular statewide practice.

¶56 Even if the jury instruction is to be considered erroneous, the majority additionally compounds any error by changing the law when it untethers the sufficiency of the evidence analysis from the jury's verdict by measuring the claim against the statutory elements rather than the given instruction. Thus, it affirms a criminal conviction not by reviewing the jury's verdict but on the basis of a theory not presented to the jury.

¶57 In addition to the flaws of altering statewide practice and changing the law, the consequences of the majority's misplaced analysis are substantial: (1) it undermines the integrity of the judicial process because it permits the jury to ignore the circuit court's instruction so long as an

1

appellate court at some later date determines that the given instruction is erroneous and (2) it violates the constitutional right to a trial by jury which requires that a jury, rather than a subsequent appellate court, reach the requisite finding of "guilty."

¶58 This case is challenging. Because it is clear that there was sufficient evidence to prove the elements required by the underlying criminal statute, it is tempting to conclude that the instruction is not harmful and then proceed to measure the sufficiency of the evidence against the elements required by the statute rather than those given by the court to the jury. Such an analysis, however, undermines the integrity of the process and is not the law in Wisconsin.

¶59 I conclude that the integrity of the process depends on the jury following the court's instruction which establishes the law of the case. As judges, we expect and indeed command the jury to follow the instruction of the law as given to it by the court. Now the majority is saying that, in essence, "sometimes you have to follow the court's instruction on the law, and sometimes you don't." The integrity of the process also requires that as courts we act as guardians charged with protecting the basic constitutional right of trial by jury. The majority fails in both regards. Accordingly, I respectfully dissent.

I

¶60 After correctly identifying the standard for a sufficiency of the evidence analysis, the majority opinion turns

2

to evaluating whether the sufficiency of the evidence claim should be measured against the given instruction or the statutory elements. Majority op., ¶22. It acknowledges that the general rule is to compare the evidence to the instruction used at trial. Id.

¶61 However, it states that "where the jury instructions do not accurately reflect the statute enacted by the legislature, we cannot review the sufficiency of the evidence with the jury instructions as our standard." Id., ¶22. This is because relying on an "erroneous statement of the statute . . . would, in effect, allow the parties and the circuit court in that case to define an ad hoc, common law crime." Id., ¶23.

¶62 Upon reviewing the elements of Wis. Stat. § 346.04(3) and comparing them to the jury instruction, the majority determines that "the instructions [in this case] did not properly state the statutory requirements for fleeing or eluding under Wis. Stat. § 346.04(3)." Id., ¶34. It concludes that the instruction effectively added an element to the offense when it set forth an additional requirement of proving interference or endangerment "by increasing the speed of the vehicle to flee." Id., ¶¶33, 35. Consequently, the majority opines that the instruction is erroneous because it creates "an additional requirement for the offense of fleeing or eluding" that is contrary to the legislature's clear intent. Id., ¶36.

¶63 In its subsequent analysis of whether the evidence is sufficient, the majority determines that Beamon's challenge fails when it compares the evidence to the elements of Wis.

3

Stat. § 346.04(3). Id., ¶40. Ultimately, it concludes that the erroneous jury instruction is harmless. Id., ¶51.

II

A.

¶64 Although the majority opinion refers to the constituent parts of the crime of fleeing or eluding as "requirements," its use of the word "requirements" obfuscates what it is really doing. The word "requirement" is synonymous with what are commonly defined as "elements" of the crime. See Black's Law Dictionary 538 (7th ed. 1999) (defining "elements of crime" as "[t]he constituent parts of a crime . . . that the prosecution must prove to sustain a conviction."); majority op., ¶23 (describing the constituent parts of a crime as "the requirements necessary to constitute a crime").

¶65 The majority errs when it treats a factual theory of prosecution as an element of the offense and thus erroneously concludes that something is wrong with the jury instruction.

¶66 Beamon was charged with a violation of fleeing or eluding an officer contrary to Wis. Stat. § 346.40(3).[1] The instruction requested by the State provided that the second

---

[1] Wisconsin Stat. § 346.04(3) states the following:

(3) No operator of a vehicle, after having received a visual or audible signal from a traffic officer, or marked police vehicle, shall knowingly flee or attempt to elude any traffic officer by willful or wanton disregard of such signal so as to interfere with or endanger the operation of the police vehicle, or the traffic officer or other vehicles or pedestrians, nor shall the operator increase the speed of the operator's vehicle or extinguish the lights of the vehicle in an attempt to elude or flee.

element of the offense may be proven <u>only</u> if the jury found that Beamon acted in "willful disregard of the visual or audible signal so as to interfere with or endanger the traffic officer" and that he did so "by increasing the speed of the vehicle to flee."[2]

¶67 Even though it may not be required by the statute, the factual theory of prosecution requested by the State was that Beamon interfered with or endangered the traffic officer "by increasing the speed of the vehicle to flee." The State could have employed other factual theories of prosecution. As the court of appeals observed, the State could have argued that the traffic officer was interfered with or endangered by Beamon failing to "stop, yield or slow when [the officer] was pursuing him" or by Beamon "blast[ing] right through[] a four-way stop sign." <u>State v. Beamon</u>, 2011 WI App 131, ¶9 n.2, 336 Wis. 2d 438, 804 N.W.2d 706. The State, however, chose this one instead. Subsequent insufficient evidence to support this factual theory of prosecution does not render the jury instruction incorrect.

¶68 The following exchange from oral argument underscores that the request made by the State subsequently proved to be contrary to its interest. It chose to request a jury instruction with a factual theory of prosecution that required it to prove the manner in which Beamon interfered with or

---

[2] The second element of the offense of fleeing or eluding an officer is that the defendant must "knowingly flee or attempt to elude any traffic officer." Wis. Stat. § 346.04(3).

endangered the traffic officer——"by increasing the speed of his vehicle":

> Justice Ziegler:   Why do you think the State would want to tie its hands like that? . . . . I mean, you – as a prosecutor, you could prove this case five, six different ways, I think.  Why would they limit it to increased speed?  I don't get that.
>
> Defense Counsel:  I can't read the district attorney's mind.  I don't know why.  The only thing I can think of is that the district attorney anticipated . . . that there would be testimony that he further increased his speed once the warning signals were given.  That didn't happen. . . . It may be that the district attorney anticipated testimony that didn't come.  But then what she should have done is ask to have the jury instruction changed at the end and did not.
>
> Justice Ziegler:  Right, the instructions come at the end, after all the testimony is in.  A lot of times, they conform to the testimony as it comes in.  I just don't get why they would want to stick with this one way to prove the case.  You don't know?
>
> Defense Counsel:  I don't know.[3]

¶69  Week in and week out, circuit courts throughout this state give tailored jury instructions that contain factual theories of prosecution.  Questions at oral argument appropriately recognized that tailoring a jury instruction to fit the theory of prosecution does not make the instruction erroneous:

> Justice Ziegler:  The only thing that's different, I mean if it stopped after "police or traffic officer," period, and didn't have the phrase "by increasing the

---

[3] A video recording of oral argument is available at http://www.wiseye.org/Programming/VideoArchive/EventDetail.aspx? evhdid=6868 (last visited May 3, 2013).  The quoted exchange occurs at 1:08:40.

speed of the vehicle to flee," that would be basically a standard instruction.

Counsel for the State:  Right.

Justice Ziegler:  So isn't it just that they are explaining to the jury []"here's the State's theory of the case?"  I mean, a lot of times you have to pick specific language to conform to the facts of the case or to show how the State's going to prove its case. That happens in a lot of different trials.  So, why does that make it wrong?[4]

¶70 The majority's analysis calls this common practice into question.  It is now unclear to what extent circuit courts should deviate from a standardized, pattern jury instruction in each individual case lest the factual theory of prosecution be transformed into an element of the offense and the instruction thereby be deemed erroneous.[5]

B.

¶71 Even if the jury instruction is to be considered erroneous, the majority compounds any error by untethering the sufficiency of the evidence analysis from the jury's verdict by measuring the claim against the statutory elements rather than the given instruction.  A court "cannot affirm a criminal conviction on the basis of a theory not presented to the jury."

---

[4] A video recording of oral argument is available at http://www.wiseye.org/Programming/VideoArchive/EventDetail.aspx?evhdid=6868 (last visited May 3, 2013).  The quoted exchange occurs at 1:12:20.

[5] Circuit courts have been cautioned against relying solely on a pattern jury instruction instead of fashioning a specific jury instruction: "Standard jury instructions are to assist the court but should not be used as a substitute for the court developing appropriate instructions relating to the specific facts of each case."  Anderson v. Alfa-Laval Agri, Inc., 209 Wis. 2d 337, 345-46, 564 N.W.2d 788 (Ct. App. 1997).

7

<u>Chiarella v. United States</u>, 445 U.S. 222, 236 (1980). Yet that is exactly what the majority appears to do by ignoring the law of the case in favor of a sufficiency of the evidence analysis that uses another theory of prosecution not presented to the jury.

¶72 A court's instruction to the jury establishes the law of the case, which the jury must accept in making its findings. <u>State v. Truax</u>, 151 Wis. 2d 354, 362, 444 N.W.2d 432 (Ct. App. 1989) ("We presume that the jury follows the instructions given to it."). Indeed, the jury in this case was instructed to base its verdict on the law that the circuit court set forth in its instructions:

> Members of the jury, the court will now instruct you upon the principles of law which you are to follow in considering the evidence and in reaching your verdict. It is your duty to follow all of these instructions, regardless of any opinion you may have about what the law is or ought to be. <u>You must base your verdict on the law I give you in these instructions.</u>
>
> Apply that law to the facts in the case which have been properly proven by the evidence. <u>Consider only the evidence</u> received during this trial <u>and the law as given to you by these instructions and from these alone</u>, guided by your soundest reason and best judgment, <u>reach your verdict.</u>
>
> If any member of the jury has an impression of my opinion as to whether the defendant is guilty or not guilty, disregard that impression entirely and decide the issues of fact solely as you view the evidence.
>
> <u>You, the jury, are the sole judges of the facts, and the Court is the judge of the law only.</u>

The circuit court's instruction followed Wis-JI Criminal 100 (2000), a pattern jury instruction that is regularly given in criminal trials throughout the state.

8

¶73 In State v. Courtney, 74 Wis. 2d 705, 247 N.W.2d 714 (1976), the court conducted a sufficiency of the evidence analysis against a jury instruction even when the jury instruction added an element to the offense. It applied the principle that juries must follow the law as they are instructed by the circuit court. Id. Likewise, as State v. Wulff, 207 Wis. 2d 143, 557 N.W.2d 813 (1997) demonstrates, a jury instruction should be the basis for a sufficiency of the evidence analysis even if the evidence is sufficient to support a conviction under another theory of prosecution not given to the jury.

¶74 In Wulff, which involved an allegation of second-degree sexual assault, the jury was instructed to return a verdict of "guilty" if it found that the defendant had attempted one of multiple methods by which a person can commit sexual assault. Id. at 149. The State presented three different theories of prosecution at trial, but none of them was related to the theory on which the jury was instructed. Id. As a result, the State did not meet its burden to produce sufficient evidence at trial. Id. The jury convicted Wulff despite the State's failure to meet its burden. Id.

¶75 In analyzing the sufficiency of the evidence, this court acknowledged that had the jury been instructed on the State's alternative theories, there was sufficient evidence to sustain the conviction. Id. at 152. However, despite the fact that a broader sufficiency of the evidence analysis would require it to affirm the conviction, the Wulff court explained

9

that it could "uphold Wulff's conviction only if there was sufficient evidence to support guilt on the charge submitted to the jury in the instructions."[6]  Id. at 153.

¶76 As recently as last year, this court explained that even where a jury instruction is "misleading," the sufficiency of the evidence must be considered in the context of the instruction given to the jury where the instruction received no objection at trial.  Best Price Plumbing, Inc. v. Erie Ins. Exchange, 2012 WI 44, ¶40, 340 Wis. 2d 307, 814 N.W.2d 419 (citing Kovalic v. DEC International, Inc., 161 Wis. 2d 863, 873 n.7, 469 N.W.2d 224 (Ct. App. 1991)); see also D.L. Anderson's Lakeside Leisure Co., Inc. v. Anderson, 2008 WI 126, ¶22, 314 Wis. 2d 560, 757 N.W.2d 803 (when the accuracy of a jury instruction is not properly contested on appeal, a challenge to the sufficiency of the evidence is evaluated "in light of the jury instruction[].").

¶77 Without any citation to authority the majority suggests that the law of the case doctrine does not apply in criminal cases in Wisconsin.  Majority op., ¶46 n.6.  As

---

[6] The United States Supreme Court recently analyzed a similar situation in the context of a double jeopardy issue in Evans v. Michigan, 568 U.S. ___ (2013).  In that case, the trial court, using an erroneous interpretation of the law, determined that the evidence was insufficient to sustain a conviction.  Id. at 6.  The trial court's ruling was predicated on a "clear misunderstanding" of the law because it required an element of an offense that "was not actually a required element at all."  Id. at 1, 6.  Despite the error that added an element to the offense, the United States Supreme Court determined that the trial court's ruling constituted an acquittal that precluded retrial.  Id.

10

explained above, both Courtney and Wulff are criminal cases that rely on law of the case principles. Additionally, this court has acknowledged in criminal proceedings that a previous court of appeals decision or a previous decision of this court may establish the law of the case. State v. Moeck, 2005 WI 57, 280 Wis. 2d 277, 695 N.W.2d 783; State v. Stuart, 2003 WI 73, 262 Wis. 2d 620, 664 N.W.2d 82. Likewise, the United States Supreme Court has recognized that in criminal cases, the law of the case may be established by instructing the jury. U.S. v. Wells, 519 U.S. 582, 487 (1997) (acknowledging that the law of the case may be established by jury instructions); see also United States v. Killip, 819 F.2d 1542, 1548-49 (10th Cir. 1987); United States v. Tapio, 634 F.2d 1092, 1094-95 (8th Cir. 1980); United States v. Spletzer, 535 F.2d 950, 954 (5th Cir. 1976).[7]

---

[7] Wisconsin Stat. § 805.18, a civil procedure statute, sets forth a harmless error standard. It is made applicable to criminal cases by Wis. Stat. § 972.11(1). In State v. Harvey, 2002 WI 93, ¶39, 254 Wis. 2d 442, 647 N.W.2d 189, a criminal case, this court recognized that Wisconsin's harmless error standard flows from Wis. Stat. § 805.18. See also State v. Sherman, 2008 WI App 57, ¶8, 310 Wis. 2d 248, 750 N.W.2d 500.

11

¶78 All of the above cases indicate that jury instructions become the law of the case in Wisconsin.[8] This court should not change the law and should not affirm a conviction based upon a theory of prosecution that was never heard by the jury. Erroneous or not, the jury instruction is the law of the case and must be the basis for evaluating the sufficiency of the evidence.

C.

¶79 The consequences of the majority's misplaced analysis are substantial. To begin, it undermines the integrity of the judicial process because it permits the jury to ignore the circuit court's instruction so long as an appellate court at some later date determines the given instruction is erroneous.

¶80 The circuit court clearly and forcefully advised the jury that "you must base your verdict on the law that I give to you in these instructions" and that in reaching a verdict the jury shall consider only the evidence and "the law as given to

---

[8] Multiple state and federal courts have additionally concluded that the law of the case may be established even where a jury instruction is erroneous. See, e.g., United States v. Zanghi, 189 F.3d 71 (1st Cir. 1999); United States v. Johnson, 652 F.3d 918, 922 n.2 (8th Cir. 2011); United States v. Williams, 376 F.3d 1048, 1051 (10th Cir. 2004) ("[T]he government [has] the burden of proving each element of a crime as set out in a jury instruction to which it failed to object, even if the unchallenged jury instruction goes beyond the criminal statute''s requirements."); State v. Azure, 186 P.3d 1269, 1275 (Mont. 2008) (a failure to object to a proposed jury instruction becomes the law of the case once delivered, whether or not it includes an unnecessary element); State v. Willis, 103 P.3d 1213, 1217 (Wash. 2005); State v. Rogers, 730 N.W.2d 859, 863 (N.D. 2007) (an unchallenged jury instruction becomes the law of the case); see also Weeks v. Angelone, 528 U.S. 225, 234 (2000) ("A jury is presumed to follow its instructions.").

12

you by these instructions." Nevertheless, the majority in essence concludes that sometimes a jury has to follow the instructions and sometimes it doesn't——and here, it need not follow the circuit court's instruction.

¶81 The premise that it is the court's responsibility to instruct the jury on the law, and that the jury must apply the law as instructed, is a firmly-established principle of American jurisprudence, and we should continue to follow that principle. As early as 1895, Justice Harlan, writing for the United States Supreme Court, warned against the perils of allowing a jury to ignore the court's instruction of the law:

> Public and private safety alike would be in peril if the principle be established that juries in criminal cases may, of right, disregard the law as expounded to them by the court, and become a law unto themselves.
>
> . . . .
>
> We must hold firmly to the doctrine that in the courts of the United States it is the duty of juries in criminal cases to take the law from the court, and apply that law to the facts as they find them to be from the evidence. Upon the court rests the responsibility of declaring the law; upon the jury, the responsibility of applying the law so declared to the facts as they, upon their conscience, believe them to be.

Sparf v. United States, 156 U.S. 51, 101-03 (1895).

¶82 In this case, some of Justice Harlan's admonitions are on full display. All acknowledge that there is no evidence whatsoever of an increase in speed after the siren and lights were activated. The only question at trial which addressed the issue resulted in a resounding negative:

13

> Defense Counsel: And you stated that the car was already speeding. So in your opinion, did the car speed up any quicker once you got behind the car?
>
> Officer Miller: No, it was -- it's - I don't believe it sped up any more once I got behind the vehicle. No, sir.

Although there was a complete absence of any testimony or other evidence indicating that Beamon increased the speed of his vehicle, the jury still returned a verdict of "guilty."[9] It did so despite the circuit court's instruction that in order to find Beamon "guilty," it must find that Beamon increased the speed of his vehicle after the lights and sirens were activated.

¶83 Under the majority's analytical framework, the jury is free to disregard the circuit court's instruction. How can such sanctioned disregard be harmless to the integrity of the judicial process?

¶84 Likewise, how can it be harmless when there is a violation of Beamon's right to have a jury determine whether he is guilty? The majority's analysis has the additional consequence of violating the constitutional right to a trial by jury which requires that a jury, rather than a subsequent appellate court, reach the requisite finding of "guilty." The Sixth Amendment right of trial by jury includes "as its most important element, the right to have the jury, rather than the judge, reach the requisite finding of 'guilty.'" State v. Harvey, 2002 WI 93, ¶20, 254 Wis. 2d 442, 647 N.W.2d 189 (quoting Sullivan v. Louisiana, 508 U.S. 275, 277 (1993)).

---

[9] The State has conceded on appeal that the evidence at trial did not satisfy the jury instruction. State v. Beamon, 2011 WI App 131, ¶6, 336 Wis. 2d 438, 804 N.W.2d 706.

14

¶85 It is the jury that ultimately found Beamon "guilty," supposedly on the evidence presented. Accordingly, an appellate court should affirm his conviction in a sufficiency of the evidence analysis only if the evidence at trial was sufficient to convict on the theory of prosecution as set forth in the jury instruction that was requested by the State. Wulff, 207 Wis. 2d at 152.

¶86 Affirming the conviction on a theory of prosecution not presented to the jury requires the majority to speculate what the jury might have done if given another hypothetical instruction. In essence it allows the appellate court to make the finding of "guilty" on behalf of the jury.

¶87 The jury found Beamon "guilty" based on the instruction of the circuit court, not on any other theory of prosecution. This court may not affirm a verdict that the jury did not render. To do so violates Beamon's right to a finding of "guilty" by the jury itself.

¶88 The substantial consequences of the majority's misplaced analysis are all the more glaring because of the extraordinary steps it takes in order to review the accuracy of the jury instruction in the first place. Here, the State requested the instruction it now argues is erroneous. The purported error received no objection before the circuit court. Furthermore, Beamon never asserted any error in the instruction and in fact relies on it. On appeal, he asserted only an insufficiency of the evidence. Curiously, it is the State that raised the issue before the court of appeals, abandoning the

same instruction that it previously embraced when it specifically requested that the circuit court tailor the instruction to fit the State's factual theory of prosecution.

¶89 The legislature has mandated that a "[f]ailure to object at the [jury instruction] conference constitutes a waiver of any error in the proposed instructions or verdict." Wis. Stat. § 805.13(3). However, rather than follow that statutory directive, the majority takes the extraordinary step of exercising this court's power of discretionary review. State v. Schumacher, 144 Wis. 2d 388, 407, 424 N.W.2d 672 (1988). The power of this court to review issues that are waived is not to be used "indiscriminately," but instead "it is a power to be used sparingly, and only in exceptional circumstances." Id. (emphasis added).

¶90 It is the majority's decision to review the jury instruction in this case that is exceptional, not the circumstances of the case itself. Beamon was charged with eight counts arising from the automobile chase and its aftermath. He was convicted on all eight counts and challenges only one on appeal. Of the eight counts, the fleeing or eluding charge

16

ranks among the least egregious examples of Beamon's criminal conduct.[10]

¶91 By choosing to review the jury instruction, the majority lowers the bar, effectively defining an "exceptional circumstance" to include a mine-run criminal conviction. It indiscriminately utilizes this court's discretion in order to affirm what is arguably the least egregious of eight convictions. This court should not go to such extraordinary lengths to avoid a sufficiency of the evidence analysis measured against a jury instruction that is, in the end, a correct statement of the law.

III

¶92 The issue that Beamon raised on appeal, whether the evidence is sufficient to convict him, is easily addressed. Here, the jury was instructed that in order to return a verdict of "guilty" for fleeing or eluding an officer, it must find that Beamon "knowingly fled a marked squad car by willful disregard of the visual or audible signal so as to interfere with or endanger the traffic officer by increasing the speed of the vehicle to flee." There is no evidence suggesting that Beamon increased the speed of his vehicle.

---

[10] Beamon was charged with the following: fleeing or eluding an officer contrary to Wis. Stat. § 346.04(3), possession of a short-barreled shotgun contrary to Wis. Stat. § 941.28(2), resisting an officer contrary to Wis. Stat. § 946.41(1), attempting to disarm a peace officer contrary to Wis. Stat. § 941.21, obstructing an officer contrary to Wis. Stat. § 946.41(1), unauthorized use of an entity's identifying information contrary to Wis. Stat. § 943.203, possession of a firearm by a felon contrary to Wis. Stat. § 941.29(2), and criminal damage to property contrary to Wis. Stat. § 943.01(1).

17

¶93 The evidence here, viewed most favorably to sustaining the conviction, is so insufficient that as a matter of law no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt. State v. Poellinger, 153 Wis. 2d 493, 501, 451 N.W.2d 752 (1990). Because the evidence is insufficient, I conclude that Beamon's conviction on this offense must be reversed. Accordingly, I respectfully dissent.

¶94 I am authorized to state that CHIEF JUSTICE SHIRLEY S. ABRAHAMSON joins this dissent.

18